```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION


Samuel Graber,                  :

        Plaintiff,              :

     v.                         :        Case No. 2:12-cv-0009

Michael J. Astrue,              :        JUDGE MICHAEL H. WATSON
Commissioner of Social                   Magistrate Judge Kemp
Security,                       :

        Defendant.              :
```

REPORT AND RECOMMENDATION

I. Introduction

Plaintiff, Samuel Graber, filed this action seeking review of a decision of the Commissioner of Social Security denying his application for disability insurance benefits. That application was filed on January 28, 2004, and alleged that plaintiff became disabled on February 27, 2003, due to back problems.

After initial administrative denials of his application, plaintiff was given a hearing before an Administrative Law Judge on December 19, 2006. In a decision dated June 11, 2007, the ALJ denied benefits. That became the Commissioner's final decision on September 7, 2007, when the Appeals Council denied review. Plaintiff then filed a civil action in the Court of Common Pleas of Franklin County, Ohio, which was removed to this Court and dismissed for lack of jurisdiction. Plaintiff petitioned the Appeals Council for additional time to seek judicial review and that request was granted on December 5, 2011. This case was timely filed based on that decision.

After plaintiff filed this case, the Commissioner filed the administrative record on March 12, 2012. Plaintiff filed his statement of specific errors on May 14, 2012. The Commissioner filed a response on August 13, 2013. No reply brief has been

filed, and the case is now ready to decide.

    II.  <u>Plaintiff's Testimony at the Administrative Hearing</u>

Plaintiff, who was 50 years old at the time of the administrative hearing and who has a high school education plus two years of technical school, testified as follows.  His testimony appears at pages 357-69 of the administrative record.

Plaintiff last worked in 2003 as a maintenance technician.  Prior to that, he had a similar job with a different employer.  He also worked as a sheet metal worker and did welding.

At the hearing, plaintiff identified his primary problem as needing to take breaks to take medication for his back pain.  He testified to chronic pain in his lower back which got worse due to an automobile accident.  Surgery had been recommended.  He also was having problems with his right shoulder, which was injured in the same accident, and which caused him difficulty in lifting his arm and pushing and pulling.  Additionally, he described issues with his leg and hip due to a prior fracture of the femur, and neck problems resulting from a swimming accident.

In response to questions from his attorney, plaintiff testified that his past work involved heavy lifting.  However, he did not believe he could do even a sedentary job because sitting is painful.  He testified to pain radiating down his right leg accompanied by burning and numbness.  Medication provides only partial relief.  He was unable to stand for more than two hours and also had numbness in his right arm.  Usually he is required to lie down at least once a day for 45 minutes.

    III.  <u>The Medical Records</u>

The medical records in this case are found beginning on page 141 of the administrative record.  The pertinent records can be summarized as follows.

Plaintiff underwent an MRI of his lumbosacral spine on January 21, 2000.  The test showed a broad-based disk protrusion

at L4-5 with severe central canal stenosis and left nerve root involvement. A right L5-S1 facet hypertrophy was also observed. (Tr. 144). A study done more than a year later showed some additional compromise of the disk spacing at L1-2 and an increased level of stenosis at L5-S1. (Tr. 145). Treatment notes from 2003 indicate that plaintiff had been treated with steroid injections with significant relief, and that he also had a radiofrequency lesioning of the left lumbar medial branch nerves with a moderate reduction in pain. (Tr. 151-52). He had been receiving injections since 2000.

Another MRI was done on March 16, 2004, on both plaintiff's lumbar spine and his right shoulder. The shoulder study showed degenerative joint disease and a partial tear of the supraspinatus tendon, and the spinal study confirmed degenerative disease most pronounced at the L4-5 level. (Tr. 190). Emergency room notes for 2003 show that he was seen there a number of times for exacerbation of his back pain, including from a motor vehicle accident, and that he was being treated with methadone. On March 18, 2004, his treating physician, Dr. Girijashanker, reported that plaintiff was not able to work due to multiple medical problems including degenerative joint disease of the right shoulder and spine, COPD, major depression, and hyperlipidemia. (Tr. 213).

Plaintiff was examined by Dr. Nutter on April 6, 2004. Plaintiff reported worsening of his back pain since the February, 2003 accident. His pain was constant with radiation down either leg. He also reported neck and right shoulder pain. At that time, he was taking Percocet for his pain. Dr. Nutter appeared to have only the 2000 MRI available for review. Straight leg raising was negative although plaintiff reported pain in his back from range of motion testing. Dr. Nutter's impression was chronic back and neck pain without evidence of radiculopathy and

-3-

probable arthritis.  He concluded that plaintiff had at least mild to moderate limitations in bending, walking, sitting, lifting, carrying heavy objects, climbing, crawling, and squatting.  (Tr. 214-18).  A state agency reviewer, Dr. Derrow, reviewed the file and came to the conclusion that plaintiff could perform a limited range of light work.  He based that opinion, in part, on x-rays showing only mild degenerative joint disease of the cervical spine.  His explanation for why he disagreed with the treating source's conclusion was simply that a statement about a claimant being unable to work is a decision reserved for the Commissioner.  (Tr. 224-28).

    Dr. Sarver saw plaintiff on May 7, 2004, for purposes of a psychological evaluation.  At that time, plaintiff reported that he had not used alcohol or drugs for six years.  He stated he was depressed due to his physical limitations.  Dr. Sarver thought that plaintiff had only mild or minimal limitations on work-related activities, and he rated plaintiff's GAF at 55 based on a diagnosis of adjustment disorder with depression and anxiety. (Tr. 229-33).  A subsequent state agency reviewer found only two moderate limitations, in the areas of dealing with detailed instructions and completing a workday or workweek without interruption from psychologically-based symptoms.  (Tr. 247-48).

    Dr. Girijashanker completed a residual functional capacity report on July 26, 2005.  He noted that he had been treating plaintiff since 1999.  He thought plaintiff could stand, walk or sit for only two hours each during a work day and could not use his right hand for pushing and pulling, simple grasping, and fine manipulation.  He could occasionally lift up to 20 pounds and could not squat, crawl, climb stairs, or reach above shoulder level. (Tr. 299-300).  Over a year later, plaintiff saw Dr. Rocco, seeking a second opinion about surgery.  At that time, he was still reporting back pain which had progressed in severity.

He had a herniated disk at L4-5 and radiculopathy in both lower extremities, but straight leg raising was "surprisingly negative" and muscle testing was normal, with good peripheral pulses. (Tr. 327-28). Dr. Rocco referred him to Dr. Rea, who reported that plaintiff was not a particularly good candidate for surgery. His report also indicates that plaintiff had continued to work despite his pain. (Tr. 336-38). A subsequent report by Dr. Woo, however, stated that plaintiff's pain prevented him from doing either work around his house or regular work, and that plaintiff had been without medication for six months. His examination showed some tenderness and hypertonicity in the lumbar spinal area, but most other testing was normal. (Tr. 353-54).

### IV.  The Vocational Testimony

A vocational expert, Mr. Brown, also testified at the administrative hearing. His testimony begins at page 369 of the record. He characterized plaintiff's past work as a maintenance engineer as medium and semiskilled and as a sheet metal worker as medium and skilled, although plaintiff performed both of them at the very heavy level. The arc welder job was heavy and skilled, and again performed by plaintiff at the very heavy level.

Mr. Brown was asked to assume that plaintiff was limited to lifting twenty pounds with no repetitive twisting or bending. He also would be limited to occasional use of stairs and ramps, no work on ladders, ropes or scaffolds, and no climbing or crawling. Additionally, he was asked to assume that plaintiff could do only occasional overhead lifting with his right arm, needed to change positions momentarily every 30 to 45 minutes, and could stand or sit between position changes. With those restrictions, plaintiff could not perform any of his past work. He could, however, do unskilled light or sedentary jobs such as assembly machine tender, addresser or lens inserter. If plaintiff could not sit, stand or walk for a total of eight hours in a workday, he was not

employable, and the same was true if he could not use his right hand for even simple grasping.

### V. The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 13 through 25 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that plaintiff met the insured requirements for disability benefits through December 31, 2006. Next, plaintiff had not engaged in substantial gainful activity from his alleged onset date of February 27, 2003, through the date of the decision. As far as plaintiff's impairments are concerned, the ALJ found that plaintiff had severe impairments including degenerative joint disease of the right shoulder, degenerative disk disease of the cervical and lumbosacral spine, and degenerative joint disease of the lumbosacral spine. The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that plaintiff had the residual functional capacity to perform a limited range of light work, essentially as described to the vocational expert. Adopting the vocational expert's testimony, the ALJ found that plaintiff could not do any of his past work but could perform unskilled light jobs such as assembly machine tender and microfilm mounter. Because the testimony showed that those jobs exist in significant numbers in the regional and national economies, the ALJ concluded that plaintiff was not entitled to benefits.

### VI. Plaintiff's Statement of Specific Errors

In his statement of specific errors, plaintiff raises four issues. He argues (1) that the ALJ erroneously found that he

-6-

could do a reduced range of light and sedentary work; (2) that the ALJ's decision was not based on substantial evidence; (3) that the ALJ erroneously rejected the opinion of his treating physician as to his residual functional capacity; and (4) that the ALJ should have applied Rule 201.14 of the Medical-Vocational Guidelines, which would have directed a finding of "disabled." The Court generally reviews the administrative decision of a Social Security ALJ under this legal standard:

Standard of Review. Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" Id. LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

Although plaintiff has listed four separate issues in his statement of errors (Doc. 14, at 1), he argues them together. The gist of his argument is that the opinion of Dr. Girijashanker was improperly rejected; had it been accepted, it is clear from either the vocational expert's testimony or the Medical-Vocational Guidelines that plaintiff would have been found to be disabled. Thus, the Court's focus will be on whether the ALJ relied on reasons that are both adequate and supported by the record to discount Dr. Girijashanker's opinion that plaintiff could not sit, stand or walk for enough hours in a work day to make him employable.

It has long been the law in social security disability cases that a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once. 20 C.F.R. §404.1527(d); see also Lashley v. Secretary of H.H.S., 708 F.2d 1048, 1054 (6th Cir. 1983); Estes v. Harris, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981). However, in evaluating a treating physician's opinion, the Commissioner may consider the extent to which that physician's own objective findings support or contradict that opinion. Moon v. Sullivan, 923 F.2d 1175 (6th Cir. 1990); Loy v. Secretary of HHS, 901 F.2d 1306 (6th Cir. 1990). The Commissioner may also evaluate other objective medical evidence, including the results of tests or examinations performed by non-treating medical sources, and may consider the claimant's activities of daily living. Cutlip v. Secretary of HHS, 25 F.3d 284 (6th Cir. 1994). No matter how the issue of the weight to be given to a treating physician's opinion is finally resolved, the ALJ is required to provide a reasoned explanation so that both the claimant and a reviewing Court can determine why the opinion was rejected (if it was) and whether the ALJ considered only appropriate factors in making that decision.

Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004).

The ALJ did not give controlling weight to Dr. Girijashanker's opinion because, following the dictates of Social Security Rule 96-2p, he concluded that Dr. Girijashanker's "medical opinion is not supported by the objective medical evidence or clinical findings of record, but rather appears to be based solely on an uncritical acceptance of the claimant's subjective complaints.  As such, it must be rejected."  (Tr. 19-20).  The ALJ's decision is devoid of any discussion of what inconsistencies he found between Dr. Girijashanker's views and the objective medical evidence, and it does not explain how much weight was actually given to those views.

The Commissioner defends the ALJ's decision to reject Dr. Girijashanker's opinion by arguing that there is no objective medical evidence in the record which would support such extreme limitations on plaintiff's ability to work, especially given the fact that Dr. Girijashanker stated that these limitations had existed since 1998, but plaintiff continued to perform very heavy labor through 2003.  (Tr. 300).  Although that precise rationale was not articulated by the ALJ, the Commissioner correctly notes that Dr. Girijashanker cited to only two objective studies, both MRIs, in support of his conclusions, and provided only three clinical findings or objective signs - depression, lumbar spasm, and painful movement of the right shoulder.  (Tr. 299).  It can be assumed that depression did not have an impact on plaintiff's physical abilities, so only the latter two signs provide any support for Dr. Girijashanker's assessment.  The two MRIs showed a partial rotator cuff tear and a partial tendon tear in the shoulder area, and degenerative disk disease in the lumbar spine. As to the former, however, one physician who interpreted the results, Dr. Hollingsworth, reported that plaintiff had almost normal rotator cuff strength and "no pain with cervical loading

and rotation." (Tr. 286).  In any event, the shoulder problem would not have affected plaintiff's ability to sit, stand and walk for up to eight hours in a work day, and the surgery for the tear was apparently successful.  Consequently, all that is left to support Dr. Girijashanker's opinion is the MRI showing degenerative disk disease.  The question then becomes whether his opinion is, as the ALJ concluded, completely inconsistent with that test, leading to the inference that he simply accepted plaintiff's statements about his limitations without confirming them through any objective means.

    The only MRI which appears to have been done between the date plaintiff stopped working and the date of Dr. Girijashanker's opinion is the one from March 16, 2004.  It did show mild hypertrophic changes and osteophytic spurring throughout the lumbar region, but no disk herniation or significant central or lateral neural canal stenosis.  (Tr. 190). It is accurate to say that there are no other test results showing severe limitations or symptoms, including the tests done by Dr. Nutter during his evaluation, which generally elicited pain on manipulation of the spine, but little in the way of other positive results.  Even an MRI done in 2006 did not show anything particularly different (Tr. 325).  Thus, the record does confirm the ALJ's conclusion that there is a total absence of objective evidence to support a finding of complete inability to work, in some postural position, for eight hours a day.

    It is of some concern to the Court that the ALJ's decision in this case complied only marginally, if at all, with the Court of Appeals' view of what is required by 20 C.F.R. §404.1527(d), in that, like the administrative decision found to be deficient in <u>Wilson v. Comm's of Social Security</u>, 378 F.3d 541, 546 (6th Cir. 2004), it "did not identify the evidence supporting such a finding [that the treating source's opinion was either not well supported or inconsistent with other evidence of record], and did

-10-

not explain its application of the factors listed in 20 C.F.R. §404.1527(d)(2) to determine the weight given to [the treating source's] opinion." However, plaintiff's statement of errors does not raise this "articulation" issue. Further, as <u>Wilson</u> also holds, a failure sufficiently to articulate the reasons behind the rejection of a treating source's opinion can be harmless error where remand would be an "idle and useless formality," <u>id</u>. at 547, <u>quoting NLRB v. Wyman-Gordon</u>, 394 U.S. 759, 766 n. 6 (1969). Here, given the complete lack of support for Dr. Girijashanker's opinion, the contrary interpretations of the scant objective evidence given by Dr. Nutter and the state agency reviewers, and the fact that Dr. Girijashanker appeared to determine that plaintiff was unable to perform even sedentary work during years when plaintiff was, in fact, doing very heavy labor, any remand for further explanation of the ALJ's decision would be very unlikely to alter the result in this case. For all these reasons, the Court concludes that plaintiff's statement of errors lacks merit and that the Commissioner's decision must be affirmed.

## VII. <u>Recommended Decision</u>

Based on the above discussion, it is recommended that the plaintiff's statement of errors be overruled and that judgment be entered in favor of the defendant Commissioner of Social Security.

## VIII. <u>Procedure on Objections</u>

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is

made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).


                                    /s/ Terence P. Kemp
                                    United States Magistrate Judge